UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF NEW YORK

---

1210 COLVIN AVENUE, INC.,
Now Known As DASH MARKETS, INC.,

                         Plaintiff,

vs.

TOPS MARKETS, LLC,                                    Civ. No. 03-CV-0425E(F)

                         Defendant.

---

**PLAINTIFF'S MEMORANDUM OF LAW**

**IN OPPOSITION TO**

**DEFENDANT'S DISQUALIFICATION MOTION**

McGee & Gelman
Attorneys for Plaintiff
200 Summer Street
Buffalo, New York  14222
716-883-7272

Of Counsel

Michael R. McGee, Esq.
F. Brendan Burke, Jr., Esq.
Jennifer L. Friedman, Esq.

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ........................................................................... iii

PRELIMINARY STATEMENT ...................................................................... 1

ARGUMENT ................................................................................................. 3

I.   Consideration Of Tops' Ex Parte Documents Submitted
     To The Court In Camera Is Fundamentally Inimical To
     Due Process ....................................................................................... 3

II.  Tops' Motion To Disqualify Bridgepoint Should Be Denied ................... 6

     A.   Fulham And Casciano Are Not Expert Witnesses ........................... 6

     B.   Even If Fulham And Casciano Are Expert Witnesses,
          Tops Has Not Met Its Burden Of Establishing That
          Fulham And Casciano Should Be Disqualified ................................ 9

          1.   Tops Has Not Established The Existence Of A
               Confidential Relationship ....................................... 9

          2.   The Disclosures To Colvin In 2003 Represent A
               Clear Waiver Of Confidentiality ............................. 13

     C.   A Narrowly Tailored Protective Order Would Address
          Any Concerns Tops Has About The Disclosure Of
          Attorney-Client Privileged Information ............................... 17

III. Tops' Motion To Disqualify McGee & Gelman Should Be
     Denied ............................................................................................. 18

     A.   Attorney Disqualification Motions Are Regarded With
          Disfavor In The Second Circuit ...................................... 18

     B.   McGee & Gelman Did Not Violate Disciplinary Rule 7-
          104(a)(1) ................................................................... 19

     C.   ABA Model Rule 4.2 Is Not Law In The Western
          District Of New York ...................................................... 21

     D.   McGee & Gelman Did Not Violate ABA Model Rule
          4.2 ........................................................................... 21

E.      McGee & Gelman Did Not Violate Canon 9 Of The New York Code Of Professional Responsibility ................................................. 24

**IV.   Relevant Case Law Supports Colvin's Position That McGee & Gelman Should Not Be Disqualified** ........................................................................... 26

**V.    The Requested Disqualification Of Szymkowiak Should Be Denied** ......................................................................................................... 35

**CONCLUSION** ......................................................................................................... 36

# TABLE OF AUTHORITIES

**Cases**

*Action Air Freight, Inc. v. Pilot Air Freight Corp.*,
769 F.Supp. 899 (E.D. Penn. 1991) ................................................................... 23

*Amarin Plastics, Inc. v. Maryland Cup Corp.*,
116 F.R.D. 36 (D. Mass. 1987) .............................................................. 11, 25, 26

*American Protection Insurance Co. v. MGM Grand Hotel-Las Vegas, Inc.*,
1986 WL 57464 (D. Nev. March 11, 1986) ........................................................ 25

*Ash v. Theros International Gaming, Inc.*,
2001 WL 648632 (N.D. Ill. June 6, 2001) ........................................................... 5

*B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*,
168 F.R.D. 161 (S.D.N.Y. 1996) ........................................................................ 10

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*,
376 F.Supp.2d 426 (S.D.N.Y. 2005) .................................................................. 19

*Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*,
1995 WL 598971 (S.D.N.Y. October 11, 1995) ................................................. 13

*Best Western International, Inc. v. CSI International Corporation*,
1995 WL 505565 (S.D.N.Y. August 25, 1995) .................................................. 33

*Briscoe v. Kusper*,
435 F.2d 1046 (7th Cir. 1970) ......................................................................... 4, 5

*Brown v. St. Joseph County*,
148 F.R.D.246 (N.D. Ind. 1993) ....................................................................... 23

*Camden v. Maryland*,
910 F.Supp. 1115 (D. Md. 1996) ....................................................................... 29

*Computer Network Corporation v. Spohler*,
95 F.R.D. 500 (D. D.C.1982) ........................................................................... 13

*Cram v. Lamson & Sessions Co., Carlon Division*,
148 F.R.D. 259 (S.D. Iowa 1993) ...................................................... 18, 20, 23, 24

*Dubois v. Gradco Systems, Inc.*,
136 F.R.D.341 (D. Conn. 1991) ......................................................... 23, 24, 27

*Eastman Kodak Co. v. Agfa-Gevaert*,
   2003 WL 23101783 (W.D.N.Y. December 4, 2003) ........................................ 9, 13

*Eli Lilly and Company v. Genentech, Inc.*,
   1990 WL 305392 (S.D. Ind. July 17, 1990) ..................................................... 5

*Fruehauf Trailer Corporation v. Hagelthorn*,
   208 Mich. App. 447, 528 N.W.2d 778 (Ct. of Appeals, Mich. 1995) .................... 23

*Fullerton v. Prudential Ins. Co.*,
   194 F.R.D. 100 (S.D.N.Y. 2000) ................................................................... 16

*Goldstein v. Exxon Research and Engineering Company*,
   1997 WL 580599 (D. N.J. February 28, 1997) ................................................. 32

*Gomez v. Rodriguez*,
   344 F.3d 103 (1st Cir. 2003) ........................................................................ 8

*Greene, Tweed of Delaware v. DuPont Dow Elastomers, LLC*,
   202 F.R.D. 426 (E.D.Pa.2001) ................................................................... 9, 10

*Hanntz v. Shiley, Inc.*,
   766 F.Supp. 258 (D. N.J. 1991) ............................................................. 11, 20, 23

*Hickman v. Taylor*,
   329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947) ............................................ 13

*In Re Complaint of PMD Enterprises, Inc.*,
   215 F.Supp.2d 519 (D. N.J. 2002) ............................................................. 30, 31

*In re Stephanie X.*,
   773 N.Y.S.2d 766 (3d Dept. 2004) ............................................................... 24

*Lang v. Reedy Creek Improvement District*,
   888 F.Supp.1143 (M.D. Fla. 1995) ............................................................... 23

*Lyondell-Citgo Refining, LP, v. Petroleos De Venezuela, S.A.*,
   2003 WL 22990099 (S.D.N.Y. December 19, 2003) .................................. 10, 28, 29

*Matthews v. LeBoeuf, Lamb, Greene & MacRae*,
   902 F.Supp. 26 (S.D.N.Y. 1995) ................................................................... 19

*Michael Scott Fashions v. Target Stores*,
   1995 WL 62713 (E.D.N.Y. February 9, 1995) .............................................. 19, 24

*MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*,
764 F.Supp. 712 (D. Conn. 1991) ............................................................... 25, 29, 30

*Niesig v. Team I*,
76 N.Y.2d 363, 559 N.Y.S.2d 493 (1990) .................................................. 10, 20, 23

*Philadelphia v. Westinghouse Electric Corp.*,
205 F.Supp. 830 (E.D. Pa. 1962) ....................................................................... 10

*Polycast Technology Corp. v. Uniroyal, Inc.*,
129 F.R.D. 621 (S.D.N.Y.1990) .............................................. 17, 20, 23, 33, 34, 35

*Prasad v. MML Investors Services, Inc.*,
2004 WL 1151735 (S.D.N.Y. May 24, 2004).................................................... 31, 32

*Rentclub, Inc. v. Transamerica Rental Finance Corporation*,
811 F.Supp. 651 (M.D. Fla. 1992) .................................................................... 30

*Reynoso v. Greynolds Park Manor, Inc.*,
659 So.2d 1156, 1158 (Dist. Ct. of Appeals, Fla. 3d Dist. 1995) ........................... 24

*Ricoh Co. v. Aeroflex Inc.*,
219 F.R.D. 66, 70 (S.D.N.Y. 2003) ................................................................... 16

*Shearson Lehman Brothers, Inc. v. Wasath Bank*,
139 F.R.D.412 (D. Utah 1991)........................................................................... 23

*Shoreline Computers, Inc. v. Warnaco, Inc.*,
2000 WL 371206 (Conn. Super. April 3, 2000) .......................... 23, 26, 27, 28, 29

*Smith v. Kalamazoo Ophthalmology*,
322 F.Supp.2d 883 (W.D. Mich. 2004)...................................................... 22, 23, 30

*State of New York v. Solvent Chemical Company, Inc.*,
166 F.R.D. 284 (W.D.N.Y. 1996)................................................................... 31, 32

*Stratagem Development Corp. v. Heron International*,
1992 WL 276844 (S.D.N.Y. September 30, 1992)................................................ 17

*Suggs v. Whitaker*,
152 F.R.D. 501 (M.D. N.C. 1993) .................................................................... 14

*Terra International, Inc. v. Mississippi Chemical Corp.*, ]
913 F.Supp. 1306 (N.D. Iowa 1996).............................................................. 11, 23

*United States v. A.D. Roe Co., Inc.*,
    904 F.Supp. 592 (W.D. Ky. 1995) .......................................................................... 14

*United States v. SAE Civil Construction, Inc.*,
    1996 WL 148521 (D. Neb. January 29, 1996) .................................................. 33, 34

*Upjohn v. United States*,
    449 U.S. 383, 101 S.Ct. 677, 66 L.Ed.2d 584 (1981) ............................................ 10

*Valassis v. Samelson*,
    143 F.R.D. 118 (E.D. Mich. 1992) ........................................................... 7, 8, 17, 23

**Rules**

ABA Model Rule 4.2 .......................................................... 17, 21, 22, 23, 24, 29, 30, 31

Florida Bar Code of Professional Conduct Rule 4-4.2 ....................................................30

New York State Lawyer's Code of Professional Responsibility DR 7-104....... 19, 20, 21, 23, 24, 26

Fed.R.Civ.Proc. 26.......................................................................................................... 8

Fed.R.Civ.Proc. 26(b)(3) ............................................................................................. 14

Fed.R.Civ.Proc. 26(b)(5) ............................................................................................... 3

Michigan Rule of Professional Conduct 4.2 ..................................................................22

## PRELIMINARY STATEMENT

Plaintiff 1210 Colvin Avenue, Inc., now known as Dash Markets, Inc. ("Colvin") submits the following Memorandum of Law in opposition to the motion of Defendant Tops Markets, LLC ("Tops") to disqualify Bridgepoint Partners, LLC ("Bridgepoint"), McGee & Gelman, Colvin's counsel, and Dennis Szymkowiak, CPA, Colvin's expert accountant.  Tops seeks the disqualification of Bridgepoint and its partners, Michael Casciano ("Casciano") and Daniel Fulham ("Fulham"), who acted as fact consultants on behalf of Colvin from May 2004 to September 2004 and who then terminated that role when Tops filed its first disqualification motion in September 2004.

In support of its renewed motion, Tops has improperly submitted ex parte a number of documents to the Court and requested in camera review by the Court.[1]

Tops seeks the extreme remedy of disqualification without any claim that the documents which are alleged to be privileged were disclosed by Bridgepoint, Casciano or Fulham to Colvin, its attorneys or representatives.

It is undisputed that the so-called privileged documents were not disclosed to Colvin. The extensive discovery proceedings ordered by this Court in its Memorandum and Order dated November 26, 2004 have not produced evidence of any disclosures to Colvin of attorney-client communications or protected work product documents.

The Court-ordered deposition testimony of Casciano highlights the fact that there were no real secrets between Tops and Colvin.  In 2003, when Tops and Colvin were trying to resolve their differences, Casciano met on a regular basis with Colvin's representatives, Mark Mahoney and/or Kathy Gerretsen.  During the same time, Casciano was also reporting to his superiors at

---

[1]    As discussed in Point I, infra, Tops' ex parte submission of documents for in camera review violates due process and is also in violation of Rule 5.4 of the Local Rules of Civil Procedure for the Western District of New York.

Tops concerning the facts in dispute and prepared at least one analysis of amounts potentially owed to Colvin by Tops.

Casciano's Declaration dated October 7, 2005 confirms the foregoing and states that "virtually all the information that the defendant is claiming was "confidential" was already disclosed and discussed by me with representatives of the plaintiff 1210 Colvin Avenue, Inc. *while I was still working for Tops, and at the request of Tops."* (Casciano Declaration, ¶5, emphasis in original.)

Casciano testified that he does not recall anything he shared with Tops that he did not also share with Colvin (Casciano Deposition, pp. 74-75)[2]. This includes the sharing with Colvin of the details and assumptions leading to Casciano's damages analysis prepared for Tops. (Casciano Deposition, pp. 133-134.)

The Declaration of Mark Mahoney, Director of Operations of Colvin, dated October 13, 2005 ("Mahoney Declaration"), sets forth a chart of e-mail correspondence between Colvin and Casciano or Fulham. This e-mail chart shows very clearly that Casciano and Fulham observed events as they were occurring. Casciano and Fulham are eye-witnesses, not outsiders brought in by Tops after-the-fact to conduct an investigation, as Tops would have the Court believe.

Thus, Casciano and Fulham are fact witnesses. Access to Casciano and Fulham as fact witnesses should not be barred; rather it should be supervised by a protective order as requested by Colvin.

The disqualification motion of Tops should be denied in its entirety. There has been no disclosure of privileged or confidential materials to any extent and there is no danger of any such disclosure in the future. Colvin has not gained an unfair advantage in this matter by the retention

---

[2]    A complete copy of the July 13, 2005 deposition transcript of Michael Casciano is annexed as Exhibit "A" of the Declaration of Michael A. Casciano dated October 7, 2005.

of Bridgepoint.  The matters which Colvin discussed with Bridgepoint, Casciano and Fulham in 2004 are the same matters which Colvin discussed during 2003 and earlier with Casciano and Fulham while they were employed by Tops (with Tops' knowledge and approval).

Finally, any perceived unfair advantage attained by Colvin in this matter (which Colvin disputes) has been negated and offset by the Court-ordered discovery conducted by Tops wherein Tops gained access to numerous documents which would otherwise have been protected from disclosure as Colvin's attorney-client privileged documents or Colvin's attorney work product materials.

## ARGUMENT

I.   **CONSIDERATION OF TOPS' EX PARTE DOCUMENTS SUBMITTED TO THE COURT IN CAMERA IS FUNDAMENTALLY INIMICAL TO DUE PROCESS**

In support of its motion, Tops has submitted, among other papers, the declarations of John Mineo, Esq., Robert Lane, Esq., Benjamin Zuffranieri, Esq. and Joshua Feinstein, Esq. Each of those declarations has a privilege log attached as an exhibit, with each containing a separate list of documents claimed to be privileged.  The privilege log for the Mineo Declaration lists 118 entries; Lane's lists 3 entries; Zuffranieri's has 5 entries; and Feinstein's has 7 entries.

First, Tops' privilege logs are not sufficient pursuant to Fed.R.Civ.Proc. 26(b)(5) which provides as follows:

> "When a party withholds information otherwise discoverable under these rules by claiming that it is privileged or subject to protection as trial preparation material, the party shall make the claim expressly and shall describe the nature of the documents, communications, or things not produced or disclosed in a manner that, without revealing information itself privileged or protected, will enable other parties to assess the applicability of the privilege or protection."

Fed.R.Civ.Proc. 26(b)(5).

Moreover, all the documents referenced in the four privilege logs have been submitted by Tops on an ex parte basis for in camera review by the Court in support of Tops' motion to disqualify.  Thus, Tops has delivered documents to the decision maker, the Court, relating to the merits of Tops' motion to disqualify, and yet Tops has refused to supply copies of these documents to Colvin.

As a result, Colvin has been deprived of any opportunity to review, refute or comment on the ex parte document submission, yet Tops wants the Court to rely upon the ex parte documents to the detriment of Colvin in the present motion to disqualify.

This is not a situation where the Court is reviewing in camera an ex parte document submission to determine whether the subject documents must be produced in discovery or may be withheld from discovery as privileged.

There is no Order of the Court directing submission of documents for in camera review.

Instead, Tops *unilaterally* submitted documents ex parte to the Court in support of its motion to disqualify without even making a motion for in camera review or making a motion to seal under Local Rule 5.4.

Tops' actions are a direct affront to any concept of due process and case law clearly so holds.  The United States Court of Appeals for the Seventh Circuit has so held and stated as follows:

> "**Reliance upon evidence considered in camera as the basis for decision is fundamentally inimical to due process**.  See *Ohio Bell Telephone Co. v. Public Utilities Commission*, 301 U.S. 292, 300, 57 S.Ct. 724, 81 L.Ed. 1093 et seq.; cf. *United States v. Atkins*, 323 F.2d 733, 743 (5th Cir. 1963); *Delta Airlines, Inc. v. CAB,* (D.C.Cir.1970), 39 LW 2317.  **Only the most exceptional circumstances can justify determinations based upon documents which interested parties may not examine**."
>
> *Briscoe v. Kusper*, 435 F.2d 1046, 1057 (7th Cir. 1970).  (emphasis added.)

Furthermore, the attempt to use documents submitted <u>ex</u> <u>parte</u> for <u>in</u> <u>camera</u> review in support of a motion to disqualify counsel was expressly rejected in *Eli Lilly and Company v. Genentech, Inc.*, 1990 WL 305392 (S.D. Ind. July 17, 1990).[3]   In *Eli Lilly*, plaintiff moved to disqualify counsel on prior representation grounds.  In conjunction therewith, plaintiff moved for <u>in</u> <u>camera</u> review by the Court of certain confidential exhibits.  The Court refused to consider the exhibits on due process grounds:

> "Because most of these exhibits were not submitted to opposing counsel for their review and reply, the Court has not considered them in ruling on Lilly's disqualification motion.  Accordingly, Lilly's motion for *in camera* review of *ex parte* exhibits and Genentech's motion to strike the same are both rendered moot.  *Briscoe v. Kusper,* 435 F.2d 1046, 1057 (7th Cir. 1970) (**Reliance upon *ex parte* evidence considered *in camera* 'is fundamentally inimical to due process.'**  Preventing copying and inspection of such documents "severely curtailed [the opposing party's] ability to ascertain the exact claims at issue and their opportunity to respond to those claims.)"
>
> <u>Id.</u> at *5 (emphasis added).

Furthermore, the <u>ex</u> <u>parte</u> submission by Tops for <u>in</u> <u>camera</u> review by the Court is in total disregard of Rule 5.4 of the Local Rules of Civil Procedure for the United States District Court for the Western District of New York.

In *Ash v. Theros International Gaming, Inc.,* 2001 WL 648632 (N.D. Ill. June 6, 2001), the Court found that:

> "[T]he case law is clear that no portion of the record in a case may be sealed without a prior demonstration of 'good cause' [citing *Citizens First National Bank of Princeton v. Cincinnati Insurance Company*, 178 F.3d 943, 946 (7th Cir. 1999)]".
>
> <u>Id.</u> at *1.

Similarly, Local Rule 5.4 requires that an application be submitted under seal by a party seeking to have a document sealed setting forth the reasons for sealing.  Paragraph "a" of Rule

---

3 For the Court's convenience, copies of all unreported cases cited in this Memorandum of Law are
    attached hereto as Exhibit "A".

5.4 states that "a substantial showing is necessary to restrict access" to Court documents.  No such application has been submitted by Tops and no such "substantial showing" has even been attempted by Tops.

Accordingly, under fundamental due process and simple fairness, Tops' attempt to have the Court rely on Tops' ex parte submission of documents for in camera review should be rejected by the Court.[4]

## II.   TOPS' MOTION TO DISQUALIFY BRIDGEPOINT SHOULD BE DENIED

### A.   Fulham and Casciano Are Not Expert Witnesses

Casciano and Fulham will not testify as expert witnesses in this action.  McGee & Gelman interviewed Casciano and Fulham as fact witnesses with respect to the underlying litigation. Fulham and Casciano are fact witnesses who have consulted with McGee & Gelman.

Casciano confirms in his Declaration:

a.   That as of April 2003 he was quite familiar with the factual background of Colvin's claims (Casciano Declaration, ¶¶16-17);

b.   That he was not a confidential investigator for Tops concerning the facts in dispute (Casciano Declaration, ¶¶15-16);

c.   That he does not recall discussing legal strategy with the attorneys representing Tops (Casciano Declaration, ¶43); and

d.   That it was not his function to provide expert services for McGee & Gelman (Casciano Declaration, ¶¶3(b), 60).

---

[4]   Arguably, Tops has waived the confidentiality of the documents produced in camera by providing the documents to the Court in disregard of Local Rule 5.4 and without an applicable order of the Court. Colvin expressly reserves all rights to argue that the unilateral decision of Tops to produce, ex parte to the Court, documents claimed to be privileged as attorney-client communications and/or as attorney work product, without a court order for submission of same and in complete disregard of Local Rule 5.4, has resulted in a waiver of all claims of privilege.

Thus, Casciano was not an expert for Tops, nor was he an expert for McGee & Gelman. Fulham's involvement with Bridgepoint on behalf of McGee & Gelman is the same as Casciano's, as a fact witness. Fulham's involvement with Tops, subsequent to the issuance of Colvin's March 18, 2003 claims letter, was very limited in time (less than 2 months) and also limited in substance. Tops makes no claim that Fulham served as an expert witness on its behalf.

Tops has failed to meet its burden of showing that Fulham and Casciano should be disqualified as expert witnesses. First, as stated above, Fulham and Casciano are not acting as expert witnesses but rather as fact witnesses. Therefore, because Fulham and Casciano are not Colvin's expert witnesses, they cannot be "disqualified."

In *Valassis v. Samelson*, 143 F.R.D. 118 (E.D. Mich. 1992), the Court held that a former employee who assisted the opposing party in reviewing documents was not an expert and thus opposing counsel could freely communicate with her and use her as a consultant (with an appropriate protective order prohibiting the disclosure of attorney-client privileged information). The former employee (Baer) was employed in various middle-management positions for the defendant: accounting manager, manager of construction accounting, assistant controller and controller. After she left the employ of the defendant, Baer agreed to assist the plaintiff by providing information through informal interviews and assisting in reviewing the documents received from the defendant. The defendant argued that this assistance turned the former employee into an expert. The Court rejected defendant's argument and held as follows:

> "… common sense suggests that a large portion of information communicated to an **expert -- who, after all, would be specifically hired to aid in litigation --** would be privileged. … However, **a former employee like Ms. Baer, <u>unlike an expert</u>, possesses a plethora of information, only a portion of which may be privileged**. A blanket proscription on contact between a former employee and an adverse party's attorney would be an unwarranted infringement on that employee's ability to communicate about her former employment. **The goals of open discovery and attorney-client**

> **privilege can be much better addressed through the entry of a particularized protective order covering only privileged information**."

*Valassis*, 143 F.R.D. at 124 (emphasis added).

Thus, as was held by the Court in *Valassis*, this Court should hold that Fulham and Casciano are not experts but rather fact witnesses, or at most, consultants.

The Mahoney Declaration clearly shows that Casciano and Fulham have firsthand knowledge of the facts.  Accordingly, under Fed.R.Civ.Proc. 26, they should be regarded as fact witnesses, not experts.  In *Gomez v. Rodriguez*, 344 F.3d 103 (1st Cir. 2003), the Court stated:

> "Rule 26 uses the term expert 'to refer to those persons who will testify under Rule 702 of the Federal Rules of Evidence with respect to scientific, technical, and other specialized matters.'  Fed.R.Civ.P. 26(a)(2) advisory committee's note to the 1993 amendments. **That definition does not encompass a percipient witness who happens to be an expert**.  If the individual is not providing testimony under Rule 702, he is not an expert witness for the purpose of Rule 26."

> <u>Id.</u> at 113 (emphasis added).

The Court in *Gomez* found that a witness who had a personal role in the events at issue was not an expert:

> "[T]he triggering mechanism for application of Rule 26's expert witness requirements is not the status of the witness, but, rather, the essence of the proffered testimony.  *Patel v. Gayes*, 984 F.2d 214, 218 (7th Cir.1993); Fed.R.Civ.P. 26(a) advisory committee's note to the 1993 amendments. **Accordingly, a party need not identify a witness as an expert so long as the witness played a personal role in the unfolding of the events at issue and the anticipated questioning seeks only to elicit the witness's knowledge of those events**."

> <u>Id.</u> at 113-114 (emphasis added).

Accordingly, Casciano and Fulham are not expert witnesses.  Rather, they are fact witnesses who played a personal role and witnessed the events at issue.  Tops' motion to disqualify Casciano and Fulham should be denied because Casciano and Fulham are not expert witnesses.

**B.**     **Even If Fulham And Casciano Are Expert Witnesses, Tops Has Not Met Its Burden Of Establishing That Fulham And Casciano Should Be Disqualified**

Even assuming, <u>arguendo</u>, that Fulham and Casciano are expert witnesses or consultants, Tops has not satisfied the two part test for disqualifying an expert witness.

> "In determining whether to disqualify an expert based on a prior relationship with the adversary, a court must undertake the following two-step inquiry: (1) Did the adversary have a confidential relationship with the expert; (2) Did the adversary disclose confidential or privileged information to the expert that is relevant to the current litigation? *Greene, Tweed of Delaware v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426, 428 (E.D.Pa.2001). The burden is on the party who seeks disqualification of an expert to establish that a confidential relationship exists and that the confidentiality has not been waived. *Id*., 202 F.R.D. at 429 ('The party who seeks disqualification of an expert has the burden of showing the existence of confidentiality and its non-waiver')."
>
> *Eastman Kodak Co. v. Agfa-Gevaert*, 2003 WL 23101783, *1 (W.D.N.Y. December 4, 2003).

Thus, in order to disqualify Fulham and Casciano as experts (which they are not), Tops has the burden of establishing (1) that Tops had a confidential relationship with Fulham and Casciano; and (2) that Tops disclosed confidential or privileged communications to Fulham and Casciano that are relevant to the current litigation and did not waive confidentiality with respect to said information.

**1.**     *Tops Has Not Established The Existence Of A Confidential Relationship*

Fulham and Casciano do not possess any confidential business information that is relevant to the litigation but which is non-discoverable.  There is no confidential information between Tops and Colvin because all of the relevant business information concerns transactions between Tops and Colvin in the normal course of business, which may be confidential as to the public, but is not confidential between Tops and Colvin.  See Declaration of Kathy Gerretsen, dated October 13, 2005, ¶5.

In *Greene, Tweed of Delaware v. DuPont Dow Elastomers, LLC*, 202 F.R.D. 426 (E.D. Pa. 1995), the Court held that the moving party failed to establish that any information to which the former employee had been privy was kept confidential at the time it was given or that confidentiality had since been maintained and not waived.  *Greene, Tweed*, 202 F.R.D. at 430.

Moreover, any confidentiality concerns have already been addressed by Fulham's and Casciano's executions of the Confidentiality Stipulation (see Exhibit 37 of the Declaration of Robert J. Fluskey, Jr., dated August 16, 2005).  See, e.g., *Lyondell-Citgo Refining, LP, v. Petroleos De Venezuela, S.A.*, 2003 WL 22990099 at *3 (S.D.N.Y. December 19, 2003).

It is well-established that the attorney-client privilege only applies to confidential communications between attorney and client;  it does not apply to the underlying facts.  *Upjohn v. United States,* 449 U.S. 383, 395-396, 101 S.Ct. 677, 685-686, 66 L.Ed.2d 584 (1981).  See *Niesig v. Team I*, 76 N.Y.2d 363, 372, 559 N.Y.S.2d 493 (1990) where the Court held:  "First, the [attorney-client] privilege applies only to *confidential communications* with counsel (see C.P.L.R. 4503), **it does not immunize the underlying factual information** -- which is in issue here -- **from disclosure to an adversary**." (bold emphasis added, italics emphasis in original.)

In *Upjohn*, supra, the Supreme Court explained the distinction as follows:

> "A fact is one thing and a communication concerning that fact is an entirely different thing.  The client cannot be compelled to answer the question, 'What did you say or write to the attorney?' but may not refuse to disclose any relevant fact within his knowledge merely because he incorporated a statement of such fact into his communication with his attorney."
>
> *Upjohn*, supra, 449 U.S. at 395-396, quoting *Philadelphia v. Westinghouse Electric Corp.*, 205 F.Supp. 830, 831 (E.D. Pa. 1962).

See also, *B.C.F. Oil Refining, Inc. v. Consolidated Edison Co.*, 168 F.R.D. 161, 165 (S.D.N.Y. 1996) ("the attorney-client privilege … does not extend to facts known to a party that are central to

that party's claims, even if such facts came to be known through communications with counsel who had obtained knowledge of those facts through an investigation into the underlying dispute").

Therefore, Colvin and McGee & Gelman are entitled to communicate with Fulham and Casciano regarding the *underlying facts*.  See *Amarin Plastics, Inc. v. Maryland Cup Corp.*, 116 F.R.D. 36, 41 (D. Mass. 1987) ("...Amarin's counsel could freely question Shapiro [a former officer of the opposing party] about the facts surrounding the agreement between the parties without implicating attorney-client privilege concerns").

In addition, Courts have held that attorney-client privilege cannot be used to prohibit all communications with former employees, but rather only what is asked during those communications.

> "**The attorney-client privilege cannot be used to justify an absolute proscription against *ex parte* communications with former employees**. Significantly, the attorney-client privilege exists only to the extent attorney-client confidences are implicated.  The attorney-client privilege 'only protects disclosures of communications;   **it does not protect disclosure of the underlying facts by those who communicated with the attorney.'   (The attorney-client privilege) should restrict only what may be asked during *ex parte* communications.**"
>
> *Terra International, Inc. v. Mississippi Chemical Corp.*, 913 F.Supp. 1306, 1316 (N.D. Iowa 1996), *quoting Hanntz v. Shiley, Inc.*, 766 F.Supp. 258, 270-271 (D. N.J. 1991) (emphasis added).

Thus, it is clear that the attorney-client privilege does not apply to the *underlying facts*.

In this case, Tops has submitted four privilege logs listing a total of 133 documents claimed as protected by the attorney-client privilege and/or as work product documents.  Tops alleges that either Casciano or Fulham or both were privy to the e-mails listed in the various privilege logs.

However, of the 111 entries in the privilege log of John Mineo described as "e-mail", Casciano is not referenced as a sender, recipient or "cc" recipient in some 37 of the entries, and Fulham is not referenced in 97 of the entries.

In addition, there are 14 entries in Mineo's privilege log where attorney-client privilege is claimed and *yet no attorney sent, received or was copied on the document.* Thus, it would appear that these entries (nos. 17, 18, 21, 22, 25, 26, 29, 30, 41, 81, 83, 88, 93 and 99) are <u>not</u> attorney-client privileged communications.

The documents referenced in the various privilege logs have been submitted by Tops <u>in camera.  Colvin does not have access to the documents and thus is not in a position to identify any particular document (other than the 14 referenced above) as not protected by the attorney-client privilege or otherwise refute or comment on same.</u>

In his prior Declaration in this matter dated October 4, 2004, Casciano made it clear that he had limited, if any, exposure to attorney-client privileged communications.  Casciano stated in his original Declaration as follows:

> "I frankly do not recall discussing 'litigation strategy' with any of the lawyers who worked on this case.  It was not my job, in any sense, to craft or direct Tops' strategy for dealing with the plaintiff's claim and lawsuit.  That was for senior officers such as CEO Frank Curci and General Counsel John Mineo.  No one asked my opinion as to whether the case should be settled or defended vigorously, or about legal tactics.  Nor were the Tops lawyers giving legal advice to *me*; they were, I have no doubt, instead giving legal advice to Frank Curci, Max Henderson, and John Mineo.  I do remember discussing with Hodgson Russ attorney Feinstein the contents of a possible affidavit that he wanted to submit in the case, as he notes in paragraph 3 of his Declaration.  **However, I was merely providing attorney Feinstein with factual information**.  I do not have a copy of any of the drafts of this affidavits, and I would not share them with the plaintiff or its lawyers if I did.  I have not discussed with McGee & Gelman any of my communications with attorney Feinstein related to this affidavit.  **In all cases, I was merely a factual resource for senior Tops executives and their lawyers**."

Casciano Declaration, ¶30 (emphasis added).

During his deposition in July 2005, Casciano testified that the work he did for Tops concerned "industry facts of what happens with billback allowances and things like that" and thus was not privileged (Casciano Deposition, p. 47).

Casciano's actions in "providing attorney Feinstein with factual information" do not implicate the attorney-client privilege.  In *Computer Network Corporation v. Spohler*, 95 F.R.D. 500 (D. D.C.1982), the Court held that the attorney-client privilege did not apply to communications which a corporation's general counsel had with other corporate officers and employees in order to make factual assertions for an affidavit which was publicly filed with the Court.  Id. at 502.

Furthermore, all persons with knowledge have submitted declarations stating unequivocally that neither Fulham nor Casciano disclosed any communications with Tops to Colvin or McGee & Gelman, and that Colvin's counsel repeatedly warned Fulham and Casciano not to divulge any such communications.

>    **2.    *The Disclosures To Colvin In 2003 Represent A Clear Waiver Of Confidentiality***

However, even assuming, arguendo, that Casciano and/or Fulham were privy to privileged communications, Tops still has not met its burden with respect to the requested disqualification of Casciano and Fulham.  **Tops must prove that there has been no waiver of confidentiality of the materials claimed to be privileged.**  *Eastman Kodak,* supra, at *1.

The Mineo privilege log references certain spreadsheet analyses performed by Casciano (see entries number 116-118 of the Mineo privilege log).  Tops claims that these analyses are protected as attorney work product materials.

It is Tops' burden to prove that it possesses documents which are protected by the work product privilege.  *Hickman v. Taylor,* 329 U.S. 495, 67 S.Ct. 385, 91 L.Ed. 451 (1947); *Bank Brussels Lambert v. Credit Lyonnais (Suisse) S.A.*, 1995 WL 598971 (S.D.N.Y. October 11, 1995).  "Because work product protection by its nature may hinder an investigation into the true

facts, it should be narrowly construed consistent with its purpose." *Suggs v. Whitaker*, 152 F.R.D. 501, 505 (M.D. N.C. 1993).

The spreadsheets referenced in the Mineo privilege log that Tops claims as work product are, in fact, not work product protected. See *United States v. A.D. Roe Co., Inc.*, 904 F.Supp. 592, 594 (W.D. Ky. 1995) ("The statement of material evidence does not contain any mental impressions, opinions or conclusions. **It is simply a recitation of factual information**. When the document on which discovery is sought contains a recitation of factual information provided by the client, the need for protection is minimal.") (emphasis added).

The Casciano Declaration establishes that the spreadsheet analyses performed by Casciano were essentially mathematical and "mechanical" in nature (Casciano Declaration, ¶27(b)).

Furthermore, even if a party possesses materials which are protected by the work product privilege, the opposing party may still obtain discovery of same where that party has a substantial need for the documents and cannot obtain same without undue hardship. Fed.R.Civ.Proc. 26(b)(3) provides as follows:

> "[A] party may obtain discovery of documents and tangible things otherwise discoverable ... and prepared in anticipation of litigation or for trial by or for another party or by or for that other party's representative ... only upon a showing that **the party seeking discovery has substantial need of the materials in the preparation of his case and that he is unable without undue hardship to obtain the substantial equivalent of the materials by other means**. In ordering discovery of such materials when the required showing has been made, the court shall protect against disclosure of the mental impressions, conclusions, opinions, or legal theories of an attorney or other representative of a party concerning the litigation."
>
> (emphasis added).

Accordingly, it is clear that work product is not sacrosanct; it is not always protected from disclosure. The Court may direct that work product be disclosed, even where there is no dispute

that the material in question constitutes work product, if the above two-part test of "need" and "undue hardship" is met.

Given this principle -- that work product is not always off limits and may be disclosed under certain circumstances -- the slight risk that Bridgepoint might disclose work product to Colvin at some point in the future certainly does not justify the harsh remedy of disqualification of Bridgepoint which Tops has requested.[5]

Review of the deposition testimony of Casciano demonstrates that, <u>while he was employed by Tops and dealing with the Colvin representatives</u>, Casciano freely shared his work with Colvin.

**Casciano testified that he did not recall anything he did for Tops that was not shared with Colvin (Casciano Deposition, p. 75). Similarly, Casciano testified that the analysis he performed was a factual analysis, which was not privileged, and that everybody knew about it (Casciano Deposition, p. 93).**

Further, Casciano testified that the details and assumptions which formed the basis for his analysis were all shared with the Colvin representatives. This would include the details and assumptions for Casciano's analysis finding that Tops owed Colvin the amount of $31,644.30 in billback adjustments as referenced above (Casciano Deposition, pp. 133-134) (Mahoney Declaration, ¶¶12-13).

Casciano repeatedly states in his Declaration that during 2003, while employed by Tops, he fully and freely disclosed to Colvin, with the knowledge and permission of Tops, "information from Tops records concerning the various allowance, price maintenance and other issues" (Casciano Declaration, ¶18). Similar statements can be found throughout the Casciano Declaration, including at ¶¶5, 19 and 23-29.

---

[5]  It is unclear how Bridgepoint could disclose work product to Colvin when the Casciano Declaration and Fulham deposition establish that Casciano and Fulham did not bring any documents with them when they left Tops' employ.  (Casciano Declaration, ¶27(a); Fulham Deposition, pp. 138-139.)

Indeed, Casciano states that he shared his analyses with Colvin:

> "From time to time, it was necessary for me to prepare analyses of Tops data in order to evaluate B-Kwik claims.  I shared these analyses with all the B-Kwik representatives just as I had shared other information and data."
>
> Casciano Declaration, ¶26.

See also, ¶27(c) where Casciano states:

> "[T]he analyses I prepared as a Tops manager were not 'confidential'. Through July 2003, I regularly shared analyses of pricing issues directly with various B-Kwik representatives.  No one asked or expected me to keep them confidential."

Assuming, <u>arguendo</u>, that the spreadsheets and analyses are protected by the work product privilege (which they are not because they are merely factual in nature and do not contain strategy), Tops has waived the work product privilege with respect to said documents by virtue of Casciano's disclosures of the facts contained therein to Colvin in 2003 with Tops' knowledge and permission (Casciano Declaration, ¶¶24-29).

> "'The work-product doctrine is waived when documents are voluntarily shared with an adversary **or when a party possessing the documents seeks to selectively present the materials to prove a point, but then attempts to invoke the privilege to prevent an opponent from challenging the assertion.**' *Niagara Mohawk Power Corp. v. Stone & Webster Eng. Corp.,* 125 F.R.D. 578, 587 (S.D.N.Y.1989). 'Generally, the work product privilege is waived when protected materials are disclosed in a manner which is either inconsistent with maintaining secrecy against opponents or substantially increases the opportunity for a potential adversary to obtain the protected information.' *Id.,* at 590; *see also,* 8 Wright, Miller & Marcus, *Federal Practice & Procedure* §2024 (2d Ed.1994)."
>
> *Fullerton v. Prudential Ins. Co.*, 194 F.R.D. 100, 103 (S.D.N.Y. 2000). See also *Ricoh Co. v. Aeroflex Inc.,* 219 F.R.D. 66, 70 (S.D.N.Y. 2003) (emphasis added).

Thus, Tops has not satisfied the second prong of the expert disqualification test.  Tops' motion should be denied in light of this clear waiver of confidentiality on the part of Tops.

      **C.**    **A Narrowly Tailored Protective Order Would Address Any Concerns Tops Has About The Disclosure Of Attorney-Client Privileged Information**

In *Valassis*, supra, the Court held that a protective order preventing the disclosure of attorney-client privileged information was sufficient to protect the confidences of the defendant when a former middle management employee became a fact witness and consultant for the plaintiff.

> "Ms. Baer may speak informally with the attorneys for Valassis [the plaintiff] and may aid them in reviewing the documents supplied by Samelson [the former employer defendant] during discovery.  As a former employee, she is no longer a party of Samelson and consequently does not fall under the rubric of Rule 4.2.  However, Ms. Baer is proscribed from communicating to Valassis's attorneys any information that is protected by the attorney-client privilege.  Similarly, Valassis's attorneys are forbidden from asking about this privileged information."
>
> *Valassis*, 143 F.R.D. at 126.

In *Polycast Technology Corp. v. Uniroyal, Inc.,* 129 F.R.D. 621 (S.D.N.Y.1990), the Southern District of New York held that there is no justification for a blanket ban on communication with an adversary's former employees.

> "The interest in preventing inadvertent disclosure of privileged material does not justify a blanket ban on communication with the opposing party's former employees.   In most situations a former employee will not be privy to the corporation's legal strategies after his employment has terminated.  Similarly, many employees will have no access to privileged information even while employed.  **Accordingly, the problem of protecting privileged material is best dealt with on a case-by-case basis.   Where there is a strong likelihood that a former employee does possess such information, an appropriately tailored order can be issued**."
>
> Id., at 627-628 (emphasis added).

See also *Stratagem Development Corp. v. Heron International*, 1992 WL 276844 at *9 (S.D.N.Y. September 30, 1992)(if a former employee had knowledge of attorney-client privileged communications, "a protective order might be warranted.")

A similar holding can be found in *Cram v. Lamson & Sessions Co., Carlon Division,* 148 F.R.D. 259 (S.D. Iowa 1993), where the Court stated:

> "Should the *ex parte* communications with Defendant's former employees raise concern that privileged communications will be divulged, Defendant may seek a <u>protective order</u> from the court to suppress any information which may be obtained in violation of the attorney-client privilege."
>
> <u>Id</u>. at 266 (emphasis added).

Colvin is willing to stipulate to a narrowly tailored protective order which would prohibit McGee & Gelman from inducing, listening to or receiving attorney-client privileged communications or work product documents from Bridgepoint, Fulham or Casciano and would prohibit Bridgepoint, Fulham and Casciano from disclosing attorney-client privileged communications or work product documents. See Declaration of Michael R. McGee, dated October 14, 2005 ("McGee Declaration"), ¶59.   Thus, disqualification of Fulham and Casciano (who are not expert witnesses) is not warranted because, even assuming that Fulham and/or Casciano may be in possession of privileged communications or protected documents, a protective order is the appropriate remedy, not disqualification.

## III.   TOPS' MOTION TO DISQUALIFY MCGEE & GELMAN SHOULD BE DENIED

### A.   Attorney Disqualification Motions Are Regarded With Disfavor In The Second Circuit

The Second Circuit has long recognized the fundamental right of a party to choose its counsel. Consequently, attorney disqualification motions are not favored by the courts of this Circuit.

> **"The Second Circuit has repeatedly emphasized that courts should be hesitant to disqualify attorneys**, noting the adverse impact disqualification may have on the client and the frequency with which parties make disqualification motions for purely tactical reasons.   See *Evans v. Artek Systems Corp.*, 715 F.2d 788, 791 (2d Cir.1983);  *Board of Education of*

18

*N.Y. City v. Nyquist*, 590 F.2d 1241, 1246 (2d Cir.1979);  *Government of India v. Cook Industries*, 569 F.2d 737, 739 (2d Cir.1978)."

*Michael Scott Fashions v. Target Stores*, 1995 WL 62713 at *1 (E.D.N.Y. February 9, 1995) (emphasis added).

"In order to protect a client's right to freely choose his or her counsel, the Second Circuit requires the movant in a motion for disqualification, who bears the burden of proof, to meet a 'high standard of proof' before a lawyer is disqualified.  *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791 (2d Cir.1983) (citations omitted);  see *Clark v. Bank of New York*, 801 F.Supp. 1182, 1197 (S.D.N.Y.1992) (Mukasey, J.)."

*Matthews v. LeBoeuf, Lamb, Greene & MacRae*, 902 F.Supp. 26, 28-29 (S.D.N.Y. 1995).

**"Motions to disqualify counsel have long been disfavored in this Circuit**. See, e.g., *Evans v. Artek Sys. Corp.*, 715 F.2d 788, 791-92 (2d Cir.1983) (enumerating the reasons for which disqualification motions are disfavored); *Bennett Silvershein Assoc. v. Furman*, 776 F.Supp. 800, 802 (S.D.N.Y. 1991) ('**The Second Circuit has indeed been loathe to separate a client from his chosen attorney** ....') (collecting cases). 'Disqualification motions are often made for tactical reasons, and thereby unduly interfere with a party's right to employ counsel of his choice.' *Skidmore v. Warburg Dillon Read L.L.C.*, No. 99 Civ. 10525(NRB), 2001 WL 504876, at *2 (S.D.N.Y. May 11, 2001) (citing *Nyquist*, 590 F.2d at 1246). Moreover, disqualification motions, 'even when made in the best of faith ... inevitably cause delay.' *Evans*, 715 F.2d at 792 (quoting *Nyquist*, 590 F.2d at 1246)."

*Bangkok Crafts Corp. v. Capitolo di San Pietro in Vaticano*, 376 F.Supp.2d 426, 248 (S.D.N.Y. 2005) (emphasis added).

### B.   McGee & Gelman Did Not Violate Disciplinary Rule 7-104(A)(1)

The requested disqualification of McGee & Gelman should be denied because McGee & Gelman did not violate New York State Lawyer's Code of Professional Responsibility DR 7-104(A)(1).  DR 7-104(A)(1) provides as follows:

"(A) During the course of the representation of a client, a lawyer shall not:
(1) communicate or cause another to communicate on the subject of the representation with a party the lawyer knows to be represented by a lawyer in that matter unless the lawyer has the prior consent of the lawyer representing such other party or is authorized by law to do so."

DR 7-104(A)(1).

19

The long-accepted view is that former employees are not considered to be a "party" pursuant to DR 7-104. *Niesig,* supra, 76 N.Y.2d at 369, 559 N.Y.S.2d 493 ("…we agree with the holding that DR 7-104(A)(1) applies only to current employees, not former employees…"). Therefore, McGee & Gelman may contact Tops' former employees (e.g., Fulham and Casciano) without notice to Tops because Fulham and Casciano are not considered to be "Tops."

> "In any event, however, the traditional view has been that former employees are not encompassed within the term 'party' in DR 7-104, and so may be contacted without notice to the corporation's attorney."
>
> *Polycast*, supra, 129 F.R.D. at 626.

***Tops has not cited any case decided by either New York State Courts or New York Federal Courts which has disqualified a law firm for conducting <u>ex</u> <u>parte</u> interviews with an adversary's former employee or for hiring a former employee as a consultant.***

Courts have specifically held that DR 7-104 does not bar communications with former employees and that if there is a concern that attorney-client privileged information may be disclosed, then a protective order (not disqualification) may be appropriate.

> "**In light of overwhelming case law and commentary on the subject supporting *ex parte* communications with former employees, this court is persuaded that DR 7-104(A)(1) does not proscribe *ex parte* communications with the Defendant's former employees.   Even if the statements of a former employee may reveal facts which give rise to corporate liability, this possibility does not implicate the purposes of DR 7-104(A)(1).**   See *Hanntz*, 766 F.Supp. at 260-70.   The court further concludes that reading the rule otherwise unnecessarily constricts discovery under Federal Rule of Civil Procedure 26 without furthering the purpose of DR 7-104 and the concerns it seeks to address.   **Should the *ex parte* communications with Defendant's former employees raise concern that privileged communications will be divulged, Defendant may seek a <u>protective order</u> from the court to suppress any information which may be obtained in violation of the attorney-client privilege**."
>
> *Cram*, supra, 148 F.R.D. at 266 (emphasis added).

Consequently, DR 7-104 does not provide a basis for disqualification of McGee & Gelman in this matter.

### C. ABA Model Rule 4.2 Is Not Law In The Western District Of New York

Tops' argument that McGee & Gelman should be disqualified for violating Model Rule 4.2 of the ABA Model Rules of Professional Conduct is without merit because said Rules are not governing authority in the Western District of New York. Rather, the Western District of New York has stated that attorneys in the Western District of New York are governed by the New York State Lawyer's Code of Professional Responsibility. See, e.g., Western District of New York Local Rules 23(h) and 83.1. Therefore, Tops' motion to disqualify McGee & Gelman on the basis of ABA Model Rule 4.2 should be denied because the Western District of New York has not adopted ABA Model Rule 4.2.

### D. McGee & Gelman Did Not Violate ABA Model Rule 4.2

Even assuming, _arguendo_, that ABA Model Rule 4.2 could somehow serve as a basis for disqualifying McGee & Gelman in this action, McGee & Gelman did not violate the rule. Model Rule 4.2 of the ABA Model Rules of Professional Conduct provides as follows:

> "In representing a client, a lawyer shall not communicate about the subject of the representation with a party the lawyer knows to be represented by another lawyer in the matter, unless the lawyer has the consent of the other lawyer or is authorized to do so."

Thus, pursuant to Model Rule 4.2, McGee & Gelman would not be permitted to communicate about the subject of a representation with a party that McGee & Gelman knows to be represented by another lawyer. Neither Bridgepoint nor Fulham and Casciano are represented by Tops' attorneys. Tops' argument that the Fulham and Casciano, who were formerly employed by Tops, are represented by Tops attorneys for the purposes of Model Rule 4.2 is without merit. Fulham and Casciano have retained independent counsel in this matter.

21

In a recent case, *Smith v. Kalamazoo Ophthalmology*, 322 F.Supp.2d 883 (W.D. Mich. 2004), the Court denied defendant's motion to disqualify plaintiff's counsel who had engaged in <u>ex parte</u> contact with defendant's former employee, Salliotte.  Ms. Salliotte had served as defendant's office administrator and as the "main contact" for defense counsel, Thelen, concerning plaintiff's claims.  <u>Id.</u> at 887.  Indeed, defendant's attorney conferred with Salliotte on twelve occasions to discuss and provide legal advice regarding the case.  Counsel and Salliotte discussed settlement options as well as the legal strengths and weaknesses of plaintiff's claims.  <u>Id.</u>  Defense counsel's affidavit stated that his "legal advice to Defendant was based entirely on the information and communications he received from Salliotte." <u>Id.</u>

Despite these extensive prior contacts between defendant's attorney and Salliotte, the Court found that disqualification was not called for and denied defendant's motion.

The motion to disqualify was based on Michigan Rule of Professional Conduct 4.2, the Michigan corollary of ABA Model Rule 4.2.  The Court held that the Michigan Rule and the ABA Rule did not apply to former employees.  <u>Id.</u> at 888-889.

The Court noted that the ABA Committee on Ethics and Professional Responsibility had taken the position that Model Rule 4.2 does not apply to former employees.  <u>Id.</u> at 889.

The Court held that:

> "[A]n attorney may have <u>ex parte</u> contact with an unrepresented former employee of an organizational party, subject to the limitation that the attorney may not inquire into areas subject to the attorney-client privilege or work product doctrine."
> <u>Id.</u> at 890-891.

Finally, the Court examined whether the attorney-client privilege had been breached and found as follows:

> **"Defendant has failed to show that Piper [plaintiff's attorney] inquired into privileged matters during his communications with Salliotte.  Piper**

**has indicated that he took appropriate precautions against disclosure of privileged information by informing Salliotte that he would not be inquiring into discussions Salliotte had with Thelen or any other attorney and that he did not inquire into areas likely to involve privileged communications, such as negotiations, settlement strategy, or settlement posture in the administrative proceeding. Because Piper is an officer of the Court, the Court may accept Piper's representations as true."**

Id. at 891 (emphasis added).

The conduct of McGee & Gelman in this action with respect to Casciano and Fulham is indistinguishable from the conduct of plaintiff's attorney vis-à-vis Salliotte in *Smith v. Kalamazoo Ophthalmology*.

A majority of Courts have held that a party or its attorney may have ex parte contacts with former employees of an opposing party. Thus, Model Rule 4.2 and/or DR 7-104(A)(1) "have no application to former employees who no longer have any relationship with a corporation." *Brown v. St. Joseph County*, 148 F.R.D.246, 253 (N.D. Ind. 1993). Accord, *Polycast* supra, 129 F.R.D. 621 (S.D.N.Y. 1990); *Shoreline Computers, Inc. v. Warnaco, Inc.*, 2000 WL 371206, *1 (Conn. Super. April 3, 2000)[6] ("Rule 4.2 does not bar contact by an attorney for an adverse party with former employees of a corporation."); *Niesig,* supra, 76 N.Y.2d 363, 559 N.Y.S.2d 493 (1990); *Shearson Lehman Brothers, Inc. v. Wasath Bank*, 139 F.R.D.412 (D. Utah 1991); *Dubois v. Gradco Systems, Inc.*, 136 F.R.D.341 (D. Conn. 1991); *Action Air Freight, Inc. v. Pilot Air Freight Corp.,* 769 F.Supp. 899 (E.D. Penn. 1991); *Hanntz,* supra, 766 F.Supp.258 (D. N.J. 1991); *Cram,* supra, 148 F.R.D.259 (S.D. Iowa 1993); *Terra International,* supra, 913 F.Supp.1306 (N.D. Iowa 1996); *Lang v. Reedy Creek Improvement District*, 888 F.Supp.1143 (M.D. Fla. 1995); *Valassis,* supra, 143 F.R.D.118 (E.D. Mich. 1992); *Fruehauf Trailer Corporation v. Hagelthorn,* 208 Mich. App. 447, 528 N.W.2d 778 (Ct. of Appeals, Mich. 1995);

---

[6]   Although *Shoreline* is a Connecticut state court case, it has been cited favorably by the Southern District of New York in *G-I Holdings,* supra, 199 F.R.D. at 534.

and *Reynoso v. Greynolds Park Manor, Inc.*, 659 So.2d 1156, 1158 (Dist. Ct. of Appeals, Fla. 3d Dist. 1995), citing a lengthy list of Federal and State cases.

In *Cram*, supra, the Court stated as follows in footnote 7:

> "Several state bar associations have addressed this issue and have **unanimously held** that under either Rule 4.2 or DR 7-104(A)(1) an attorney may conduct *ex parte* interviews with former employees of an opposing corporate party.  See *Dubois v. Gradco Systems, Inc.*, 136 F.R.D. 341, 345 n.4 (D. Conn. 1991) (citing bar association opinions of Illinois, Pennsylvania, Minnesota, Nassau County, Virginia, Massachusetts, Colorado, City of New York and Florida)."
>
> 148 F.R.D. at 264 (emphasis added).

Therefore, Tops' motion to disqualify McGee & Gelman under Rule 4.2 should be denied because (a) Rule 4.2 is not the law in the Western District of New York; (b) Rule 4.2 does not apply to contacts with former employees; and (c) McGee & Gelman did not inquire into areas involving attorney-client privileged information.

### E.    McGee & Gelman Did Not Violate Canon 9 Of The New York Code Of Professional Responsibility

Canon 9 of the New York Code of Professional Responsibility provides that a lawyer should avoid even the appearance of professional impropriety.  Tops' argument that McGee & Gelman should be disqualified for allegedly violating Canon 9 is without merit.  "In the absence of actual prejudice or a substantial risk thereof, the appearance of impropriety alone is not sufficient to require disqualification (see *People v. Herr*, 86 N.Y.2d 638, 641, 635 N.Y.S.2d 159, 658 N.E.2d 1032 [1995] )."  *In re Stephanie X.*, 773 N.Y.S.2d 766, 767 (3d Dept. 2004).  Accord, *Michael Scott Fashions*, supra, at *1.

Tops cites two cases in support of its argument that McGee & Gelman should be disqualified pursuant to Canon 9.

The first, *MMR/Wallace Power & Indus., Inc. v. Thames Assocs.*, 764 F.Supp. 712 (D. Conn. 1991), is distinguishable from the present action as set forth in detail in Point IV, <u>infra</u>.

The primary case relied on by Tops, *American Protection Insurance Co. v. MGM Grand Hotel-Las Vegas, Inc.*, 1986 WL 57464 (D. Nev. March 11, 1986), a District of Nevada case, is also readily distinguishable.  In *American Protection Insurance*, the employer designated its then-current employee as its sole testifying expert witness.  *After the employee resigned, he entered into an <u>agreement</u> with his former employer wherein he agreed, among other things, to continue to assist in the litigation*.  The Court characterized the former employee's role in the litigation as "indispensable."  *American Protection Insurance*, <u>supra</u>, at *1.  Later, the former employee and the opposing party began negotiations to hire the former employee as an expert witness even though the former employee was *under contract* to the former employer for litigation services.

In the present matter, Casciano and Fulham were never designated as expert witnesses by Tops or Colvin, nor did Casciano or Fulham ever enter into any sort of agreement with Tops with respect to the litigation.  Finally, despite Tops' protestations that Casciano was its "in house expert", and that Fulham was part of the litigation control group, Tops never even approached either Casciano or Fulham to engage their services after Casciano and Fulham left Tops' employ.[7] See also *Amarin Plastics,* <u>supra</u>, 116 F.R.D. at 40, where the Court distinguished *American Protection Insurance* (referred to in the opinion as *MGM*):

> "Both *Sperber* and *MGM* are easily distinguishable from the instant case.   In *Sperber*, the acts of the former employees were the subject of the litigation, and in *MGM*, the former employee had an ongoing agency relationship as a consultant in the litigation.   Here, defendant has presented no facts which would demonstrate that Shapiro had an ongoing agency or fiduciary relationship with Maryland Cup, or that Shapiro's acts or omissions could be imputed to Maryland Cup for purposes of its civil liability.   **The mere fact**

---

[7]   In fact, as detailed in the McGee Declaration, Tops did not even request Casciano's assistance in the present litigation during Casciano's last four months at Tops, despite the vast amount of discovery being conducted at that time.  See McGee Declaration, ¶42.

**that Shapiro may be a prospective witness, even a critical one, does not trigger the prohibitions of DR 7-104(A)(1)."**

*Amarin Plastics,* 116 F.R.D. at 40 (emphasis added).

In the present matter, there is no appearance of impropriety.  Neither Casciano nor Fulham (who left Tops' employ before the litigation began) is "indispensable" to Tops' litigation efforts as shown by Tops' own attitude toward Fulham and Casciano at the time of their leaving Tops' employ and thereafter.  Colvin's choice of counsel should not be disturbed.

### IV.    RELEVANT CASE LAW SUPPORTS COLVIN'S POSITION THAT McGEE & GELMAN SHOULD NOT BE DISQUALIFIED

The cases cited by Tops in support of its request for attorney disqualification are discussed in more detail below and are distinguishable from the present matter.

A case with facts much more similar to the present litigation than the cases cited by Tops is *Shoreline,* supra.  In *Shoreline*, the former employee (Anastasio) was a manager of microcomputing, i.e., middle-management. While he was employed, Anastasio had several meetings with his employer's attorneys and which lasted for several hours.  The employer's attorneys discussed the strengths and weaknesses of both parties' positions in the litigation as well as trial strategy with Anastasio.

However, notwithstanding the fact that the former employee (Anastasio) had access to privileged information and trial strategy, the Court rejected a ban on contacting former employees with privileged information and stated that such a ban would be a "**far reaching view**."  *Shoreline*, supra, at *3. (emphasis added.)  *The Court further held that the attorney could interview the former employee ex parte and that any privileged information would be protected by a protective order that the attorney not inquire about any privileged information*.  "Moreover, the sanctity of any privileged communications can be adequately protected by an order directed to plaintiff's counsel

that he is to not listen to or discuss confidential communications with any former employee."

*Shoreline*, supra, at *3.

The *Shoreline* Court stated as follows:

> "Attorney Underhill and Attorney Colosi in connection with their representation of Warnaco with respect to the subject matter of this litigation each discussed with Joseph Anastasio the facts as they relate to the claims being made by the plaintiff. Anastasio had previously been manager of microcomputing at Warnaco and, in that capacity, had had extensive dealings with the plaintiff. Attorney Underhill had one three hour meeting with Anastasio. Attorney Colosi also had a two or three hour meeting with Anastasio in which he discussed the underlying facts. Attorney Colosi also spoke with Anastasio on a number of occasions over the telephone. Both attorneys informed Anastasio that their discussions with him were confidential **and addressed the strengths and weaknesses of the claims of both parties to the litigation**. Attorney Colosi also had similar discussions with Wallace Brooks, Irwin Zaetz, and Kay Bentson.
>
> \* \* \* \* \*
>
> **Warnaco also claims that the mere fact that confidential attorney-client communications were conveyed and trial strategy was discussed with the former employees is sufficient to bar all *ex parte* interviews of those individuals by an adverse party's lawyer. Warnaco offers no authority for this far reaching view**. Such a ban would impair the time honored right of counsel for all parties to interview willing non-party witnesses in private, without the presence or consent of opposing counsel and without a transcript being made. *I.B.M. v. Edelstein*, 526 F.2d 37 (2d Cir.1975). It is also not necessary. **The plaintiff does not dispute that privileged communications between Warnaco's attorneys and its former employees should remain confidential and should not be divulged to plaintiff's attorney. These confidences can be preserved by an order from the court that plaintiff's attorney not inquire into such communications during any *ex parte* interviews**. See *Dubois v. Gradco Systems*, supra, 136 F.R.D. 341 (while the court did not issue an order concerning privileged communications, the court admonished plaintiff's counsel to take care not to induce or listen to such communications)."

*Shoreline*, supra, at *2 -*3. (emphasis added.)

Fulham's and Casciano's involvement with the litigation while employed by Tops is comparable to that of Anastasio in *Shoreline*. Like Anastasio in *Shoreline*, Fulham and Casciano attended meetings with counsel and had telephone conversations with Tops' counsel. In addition,

Tops claims that Fulham and Casciano were privy to the Tops' attorney's views on the litigation and litigation strategy (Fulham and Casciano do not agree). However, the *Shoreline* Court held that despite the fact that Anastasio in the *Shoreline* case had a certain level of involvement with the litigation, any concerns that attorney-client privileged information would be disclosed were adequately addressed by a protective order directing opposing counsel not to inquire into or listen to attorney-client privileged information.

As discussed in the McGee Declaration, McGee & Gelman will stipulate to a protective order directing Fulham and Casciano not to disclose attorney-client privileged information or work product information and directing McGee & Gelman not to inquire into areas of attorney-client privileged information or work product information. *Such an order would confirm the practice of McGee & Gelman and Fulham and Casciano since their relationship began.*

Another case similar to the present matter is *Lyondell-Citgo,* supra, (S.D.N.Y. 2003). In *Lyondell-Citgo*, the Court denied a motion brought by a former employer to bar its adversary's attorneys from interviewing its former employees, even though the former employees had access to the former employer's confidential business information and attorney-client privileged information.

> "Defendants seek this protective order on the grounds that the individuals in question are likely to have been exposed to privileged or confidential information, or to have been privy to business proprietary information and/or trade secrets. However, we find that the circumstances of this case do not warrant the imposition of a bar on *ex parte* communications. **As regards privileged material, we find that defendants' interests will be sufficiently protected by two stipulations made by plaintiff, in its response to defendants' motion**. … **As regards confidential material, proprietary information and trade secrets, we agree with plaintiff that defendants' interests will be sufficiently protected by the confidentiality agreement signed by the parties** subsequent to this court's order of October 30, 2003, regarding *ex parte* contacts."
>
> *Lyondell-Citgo*, supra, at *3 (emphasis added).

Thus, as was the case in *Shoreline,* supra, the *Lyondell-Citgo* Court held that a protective order (not disqualification) was the appropriate method to safeguard the opposing party's confidential business information and attorney-client privileged information.

Tops cites *Camden v. Maryland*, 910 F.Supp. 1115 (D. Md. 1996), which applied Model Rule 4.2, not DR 7-401 (which applies in the Western District of New York). *Camden* is easily distinguishable from the present matter because in *Camden* the former employee *disclosed attorney-client privileged communications and documents* to the opposing attorney. *Camden*, 910 F.Supp. at 1122-1123. In the present case, declarations submitted by all relevant Colvin employees and attorneys and Fulham and Casciano establish that Fulham and Casciano did not disclose any attorney-client privileged information or documents to McGee & Gelman.

In *Camden*, the attorneys failed to advise the former employee not to disclose any attorney-client privileged information **and also obtained attorney-client privileged documents**. *Camden*, 910 F.Supp. at 1122. In the present matter, it is undisputed that not only did McGee & Gelman instruct Casciano and Fulham not to disclose any communications (written or oral) that either person may have had with Tops' attorneys or any attorney-client privileged or work product documents, but also that none were in fact disclosed.

Similarly, *MMR/Wallace,* supra, involves significantly different facts and is also distinguishable from the present matter. *MMR/Wallace* held that, under the particular fact pattern therein, opposing counsel may not have ex parte communications with an adversary's former employee because the former employee acted as a **trial consultant to the former employer**.

In *MMR/Wallace*, the former employee "functioned almost exclusively in the capacity of trial consultant and paralegal for [the then-present employer]." *MMR/Wallace*, 764 F.Supp. at 724.

Thus, *MMR/Wallace* is distinguishable from the present action because in *MMR/Wallace*, the former employee (Willett) was a key member of the former employer's litigation team.  In fact, even after his employer declared bankruptcy, Willett engaged in negotiations with his employer's counsel and surety (Aetna) to continue serving as a trial consultant.

In contrast, in the present matter, after Fulham and Casciano left Tops, Tops made no effort to contact either Fulham or Casciano to assist Tops with the litigation.  Casciano Declaration, ¶26. **The fact that Tops made no effort to retain the services or even assure future cooperation of Fulham or Casciano provides strong evidence that they were not trial consultants or key members of Tops' litigation team**.  Therefore, Tops' reliance on *MMR/Wallace* is misplaced and without merit.

Tops also relies on *Rentclub, Inc. v. Transamerica Rental Finance Corporation*, 811 F.Supp. 651 (M.D. Fla. 1992), where attorney disqualification was granted.  However, *Rentclub* is not applicable here because it was decided under Model Rule 4.2 of the ABA Rules and its Florida corollary, Rule 4-4.2 of the Florida Bar Code of Professional Conduct.

*Rentclub* is a 1992 decision which found that the above Rules of Professional Conduct (which are not applicable to the attorney conduct in this case) prohibited contacts with former employees of corporate parties represented by counsel.  811 F.Supp. at 654.

As discussed in detail above, *Smith v. Kalamazoo*, supra, a 2004 holding, establishes that the American Bar Association Committee on Ethics and Professional Responsibility has taken the position that Model Rule 4.2 does not apply to former employees.  Thus, *Rentclub* is clearly not controlling precedent here.

Tops cites *In Re Complaint of PMD Enterprises, Inc.*, 215 F.Supp.2d 519 (D. N.J. 2002), where the Court revoked the admission pro hac vice of plaintiff's counsel.  The Court cited

counsel's lengthy history of misconduct (Id. at 524) and relied on the finding that counsel had violated the New Jersey Rules of Professional Conduct, including the New Jersey version of ABA Rule 4.2, which expressly barred contact with former employees of the opposing party who were members of the litigation control group (Id. at 526-527).  As shown above, the majority view and the ABA view is that Rule 4.2 does not apply to former employees of the opposing party.

Tops also cites the cases referenced by the Court in its Memorandum and Order dated November 26, 2004.  With one exception discussed below, these cases either support Colvin's position or are, at worst, neutral.

The cases of *State of New York v. Solvent Chemical Company, Inc.*, 166 F.R.D. 284 (W.D.N.Y. 1996) and *Prasad v. MML Investors Services, Inc.*, 2004 WL 1151735 (S.D.N.Y. May 24, 2004), do not mandate the disqualification relief requested by Tops.  In fact, neither of those cases involved a request for disqualification of a consultant, an expert or counsel.  On the facts, both *State of New York v. Solvent Chemical* and *Prasad* involved a party hiring its own former employee as a fact witness.  Thus, on the facts alone, each case is distinguishable from the facts in the case at bar.

Both *Solvent Chemical* and *Prasad* support Colvin's position on this motion.  Both cases hold that it is generally acceptable to pay the expenses of a fact witness.  *Prasad* holds that the reimbursement of the fact witness may be at a reasonable hourly rate such as the witness would normally receive in his or her business. Id. at *5. In this case, the reimbursement rate for Casciano and Fulham was $225 per hour.  This is the same hourly rate that said witnesses received on other consulting business (Fulham Deposition, pp. 106-109; Casciano Declaration, ¶63).

Further, *Prasad* holds that it is acceptable to retain a fact witness as a litigation consultant as long as said retention was not designed as a financial inducement, a means to obtain cooperation of a hostile witness or is otherwise improper. Id. at *5.

Similarly, *Goldstein v. Exxon Research and Engineering Company,* 1997 WL 580599 (D. N.J. February 28, 1997), does not involve a request for disqualification. *Goldstein*, like *Solvent Chemical* and *Prasad*, involved a party hiring its own former employee as a fact witness. The Court in *Goldstein* found that this was improper and directed, as a remedy, that the consulting agreement with the fact witness be disclosed. Further, the witness was declared a hostile witness.

In this case, the Court has directed not only that the consulting agreement with Bridgepoint be disclosed but also that Colvin and McGee & Gelman disclose all communications with Bridgepoint and all documents exchanged between the parties.

The disclosures directed by the Court have necessarily involved turning over to Tops and its attorneys hundreds of pages of documents, many of which would otherwise be privileged as attorney-client communications or attorney work product.

Any alleged prejudice claimed by Tops with respect to the retention by McGee & Gelman of Bridgepoint as consultants in this action (which Colvin disputes, but assuming, arguendo, it occurred) has certainly been negated by the massive disclosure to Tops of hundreds of pages of documents, many of which would otherwise be protected from disclosure as privileged communications.

While the three foregoing cases certainly provided a basis for the Court-ordered discovery of communications herein, these cases do <u>not</u> provide any basis whatsoever for the disqualification requested by Tops. In fact, these cases provide strong support for the retention

of Casciano and Fulham as fact witnesses because there is no evidence whatsoever that the payments made to Bridgepoint (at its customary hourly rate for work which was certainly performed) were designed as a financial inducement, a means to obtain cooperation of otherwise hostile witnesses or were otherwise improper.

*Best Western International, Inc. v. CSI International Corporation*, 1995 WL 505565 (S.D.N.Y. August 25, 1995), did involve the granting of a disqualification motion. However, *Best Western* is readily distinguishable on the facts. In *Best Western*, defendant's attorneys agreed to represent plaintiff's former employee and, in the course of such representation, reviewed three boxes of undisputedly privileged documents which the employee brought with her from her former employment. The documents related to the pending litigation.

In the case at bar, there is no evidence whatsoever that Casciano or Fulham brought *any documents* (privileged or otherwise) with them from Tops or provided any such documents to Colvin. See Casciano Declaration, ¶27(a); Fulham Deposition, pp. 138-139. The numerous sworn declarations submitted by Bridgepoint and by Colvin also attest to the fact that no Tops documents were provided by Casciano or Fulham to Colvin or Colvin's attorneys or representatives.

The *Best Western* case was decided on the basis of the improper production of the three boxes of privileged documents, which the Court cited as the most important factor. Id. at *2. No such fact pattern is present in this case.

The fact patterns in *Polycast*, supra, (S.D.N.Y. 1990) and in *United States v. SAE Civil Construction, Inc.*, 1996 WL 148521 (D. Neb. January 29, 1996) both involved ex parte contact by a party or its counsel with a former employee of the opposing party. In *United States v. SAE*, the District Court for the District of Nebraska granted defendant's motion for disqualification in

order to guard against the perceived danger of the inadvertent use of confidential information. Id. at *3.

It is respectfully submitted that the holding in *United States v. SAE* is inconsistent with the majority of cases addressing this issue and is not controlling precedent in the Second Circuit and that, upon the distinguishable set of facts and circumstances presented herein, the Court should decline to follow that case.

Rather, the Court should look to the *Polycast* decision which found, in general, that ex parte contact with a former employee is acceptable and that the danger of inadvertent disclosure of confidential or privileged information can be minimized or negated by a protective order specifically addressing the concerns of opposing counsel.

A protective order would be especially appropriate here where Bridgepoint, McGee & Gelman and Colvin have already demonstrated that extensive contact among said entities did not result in the disclosure of privileged information. **Tops has failed to identify any specific privileged information which Bridgepoint has allegedly disclosed.** Colvin and McGee & Gelman have submitted declarations specifically denying the disclosure of any privileged information by Bridgepoint.

The Court in *Polycast* stated as follows:

> "The interest in preventing inadvertent disclosure of privileged material does not justify a blanket ban on communication with the opposing party's former employees.  In most situations a former employee will not be privy to the corporation's legal strategies after his employment has terminated.  Similarly, many employees will have no access to privileged information even while employed.  Accordingly, the problem of protecting privileged material is best dealt with on a case-by-case basis.  Where there is a strong likelihood that a former employee does possess such information, an appropriately tailored order can be issued."

> Id. at 627 - 628 (emphasis added).

In *Polycast*, supra, the Court found that the defendant, Uniroyal, had failed to identify any specific privileged information to which the former employee was privy. The Court found that if Uniroyal did come forward with evidence that privileged communications might be in jeopardy, a narrowly-tailored protective order might be appropriate. Id. at 629.

The Court in *Polycast* concluded that there had been an insufficient showing that contacts with the former employee would jeopardize privileged communications. Id.

In the case at bar, Colvin and McGee & Gelman had initial contact with Bridgepoint in May 2004 and then fairly extensive contacts during June, July and August and into the first half of September of 2004. Despite these extensive contacts, and despite having access to the discovery materials -- including privileged documents of Colvin -- produced by Colvin and McGee & Gelman to Tops, **Tops has failed to identify any specific privileged information allegedly communicated by Fulham or Casciano to Colvin, its attorneys or representatives.** Tops has had every opportunity to uncover the disclosure of privileged information by Fulham or Casciano and has been unable to do so.

Colvin would respectfully suggest to the Court that if no such disclosures took place during the summer of 2004 when Bridgepoint, Colvin and McGee & Gelman were working together without Court supervision, then certainly no such disclosures will take place if the parties were to act under the supervision of the Court in the form of a narrowly-tailored protective order specifically designed to guard against the intentional or inadvertent disclosure of privileged information.

## VI.   THE REQUESTED DISQUALIFICATION OF SZYMKOWIAK SHOULD BE DENIED

Tops also seeks to disqualify Dennis Szymkowiak, the expert accountant retained by Colvin who has worked with Colvin in this matter on a continuing basis since 2002 (see

Declaration of Joseph P. Dash dated October 13, 2005 ["Dash Declaration"], ¶8).  Szymkowiak's role has been to quantify the losses sustained by Colvin as a result of the improper conduct in which Tops has engaged.

By December 2003, six months before Szymkowiak had contact with Bridgepoint, Casciano or Fulham, Szymkowiak was able to produce detailed analyses of the damages claimed by Colvin (see Declaration of Dennis Szymkowiak dated October 13, 2005, ¶3).

Szymkowiak has not been tainted by any alleged improper disclosures by Bridgepoint, nor has Tops been prejudiced by any alleged improper disclosures by Bridgepoint.  There is no evidence whatsoever of any improper disclosures to Szymkowiak or to anyone else, nor did any such disclosures take place.

The protective order requested by McGee & Gelman would obviate any risk of improper disclosures in the future if Bridgepoint is allowed to resume its work with Colvin.

Thus, there would be no prejudice to Tops if Szymkowiak remains in the case as the expert accountant for Colvin.  On the other hand, if Szymkowiak is disqualified, Colvin would be greatly prejudiced and would suffer substantial hardship (Dash Declaration, ¶¶8-10).

For the foregoing reasons, the requested disqualification of Szymkowiak should be denied in all respects.

### CONCLUSION

For the reasons set forth above and in the declarations submitted herewith, Tops' motion to disqualify should be denied in its entirety.

DATED:   October 14, 2005
         Buffalo, New York

                                              /s/  Michael R. McGee
                                              Michael R. McGee
                                              McGEE & GELMAN
                                              Attorneys for Plaintiff
                                              200 Summer Street
                                              Buffalo, New York 14222
                                              716-883-7272
                                              mmcgee@mcgee-gelman.com

## CERTIFICATE OF SERVICE

I hereby certify that on October 14, 2005 I electronically filed Plaintiff's Memorandum of

Law in Opposition to Defendant's Disqualification Motion with the Western District of New

York using the CM/ECF System, which sent notification of such filing to the following:

       Hodgson Russ LLP
       Attn:  Benjamin M. Zuffranieri, Esq.
       One M&T Plaza, Suite 2000
       Buffalo, New York 14203
       ben_zuffranieri@hodgsonruss.com

       Harter, Secrest & Emery, LLP
       Attn: Kenneth A. Payment, Esq.
       1600 Bausch & Lomb Place
       Rochester, New York 14604
       kpayment@hselaw.com

                   /s/  Michael R. McGee
                   Michael R. McGee
                   McGEE & GELMAN
                   Attorneys for Plaintiff
                   200 Summer Street
                   Buffalo, New York  14222
                   (716) 883-7272
                   mmcgee@mcgee-gelman.com